UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:07-cv-424-RJC

| | |
|---|---|
| MARY HELEN DAVIS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| CENTRAL PIEDMONT COMMUNITY COLLEGE, | ) ) ) ) |
| Defendant. | ) ) ) |

**THIS MATTER** arises out of the dismissal of Plaintiff, Mary Helen Davis, from the campus of Defendant, Central Piedmont Community College ("CPCC"). The *pro se* Plaintiff asserts claims under 42 U.S.C. § 1983 for a violation of her First and Fourteenth Amendment rights against Defendant CPCC. The Plaintiff filed her action in this Court on October 9, 2007. (Doc. No. 1).

Presently before the Court is the Defendant's motion for summary judgment as to all of the Plaintiff's causes of action (Doc. No. 23), the Plaintiff's response in opposition (Doc. No. 24), and the Defendant's reply (Doc. No. 25). Finding that the Plaintiff's claims are constitutionally prohibited, the Court grants the Defendant's motion for summary judgment.

**I.     FACTS**

CPCC is a community college and part of the North Carolina Community College System. It offers vocational, technical, and academic courses and programs from several satellite campuses throughout Mecklenburg County, North Carolina. The Plaintiff has enrolled several times in CPCC's General Educational Development ("GED") program since about 1976 and is currently working on passing her GED test.

1

The Plaintiff's complaint appears to arise from three incidents occurring on CPCC's Central campus in 2007. The first incident occurred around the end of August of 2007, when Scot Sonderman, a lab facilitator, noticed and received complaints of a "chemical smell" surrounding the Plaintiff. (Doc. No. 23-7 at 3). Sonderman asked Maurie Cole, an instructor at CPCC, to ask the Plaintiff to leave because the odor from her hair product was bothering other students. After Cole discussed the situation with the Plaintiff, the Plaintiff remained in the lab for a while longer and then left. (Doc. No. 23-8 at 1-2).

The second incident occurred at the computer lab on September 13, 2007, when the Plaintiff became "visibly upset" after an instructor closed the door to the lab. The Plaintiff left the lab for a short while, and when she returned she asked to speak with April Root, the instructor on duty at the computer lab. After a short altercation, Root asked the Plaintiff to leave. The Plaintiff refused and returned to the lab to work. Root called campus security, and an officer showed up shortly thereafter and escorted the Plaintiff off the premises. (Doc. No. 23-6 at 1-3).

The third incident occurred on September 17, 2007, when Charles Wright, Jr., the Assistant Director of Campus Security, received a report that the Plaintiff was "causing a disruption on campus." When Wright arrived at the location, he announced himself as a campus security officer and, after a short altercation, informed the Plaintiff that she was banned from campus for the "disruptions she had caused on or about September 13, 2007, and September 17, 2007." (Doc. No. 23-9 at 1-2). Instead of using CPCC's administrative process to appeal the ban, the Plaintiff filed the instant suit.

## II.     STANDARD

Summary judgment is appropriate when the Court determines that there is no genuine issue

of material fact to be tried and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In making that determination, the Court must be certain the record does not reveal any factual disputes by resolving all ambiguities and drawing all permissible factual inferences in a light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Where the nonmoving party bears the burden of proof at trial, it is up to that party to "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). These designations must indeed be specific, and "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

### III. DISCUSSION

The Plaintiff's complaint asserts claims pursuant to 42 U.S.C. § 1983 for alleged violations of the First and Fourteenth Amendments to the United States Constitution based on the Plaintiff's removal from campus. In response, the Defendant argues that it is entitled to judgment as a matter of law for three reasons: 1) Defendant CPCC is immune from suit pursuant to the Eleventh Amendment to the United States Constitution; 2) CPCC is not a "person" under 42 U.S.C. § 1983; and 3) the Plaintiff was not deprived of federally protected rights.

The Defendant moved for summary judgment on all claims. Based on established law, the Court finds that the Defendant is entitled to Eleventh Amendment immunity, and therefore finds the Plaintiff's claims to be barred. For the following reasons, the Defendant is entitled to judgment as a matter of law as to all of the Plaintiff's claims.

A. Eleventh Amendment Immunity

The Eleventh Amendment of the United States Constitution "prohibits the commencement or prosecution of any suit against one of the United States by citizens of another State or citizens or subjects of any foreign State." Ex Parte Young, 209 U.S. 123, 149 (1908). Eleventh Amendment immunity has long been interpreted to include suits brought in federal court against an unconsenting State by its own citizens as well as those from another state. Edelman v. Jordan, 415 U.S. 651, 662-63 (1974); see also Hans v. Louisiana, 134 U.S. 1, 9-15 (1890) (founding a rationale for state sovereign immunity based on the history and construction of the Eleventh Amendment). Further, Eleventh Amendment immunity includes suits brought on the basis of a federal question. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 119-20 (1984). Specifically, in Pennhurst State, the Court noted that "if a § 1983 action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting any relief on that claim." Id.; see also Alabama v. Pugh, 438 U.S. 781, 781-82 (1978).

B. Arm of the State Entities

Entities deemed to be an "arm of the state" also share in the State's immunity from suit. Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997) (internal quotation marks omitted). While no clear line separates state instrumentalities that are entitled to Eleventh Amendment sovereign immunity from those that are not, courts must follow the Supreme Court's admonition that courts should seek guidance in the twin purposes of the Eleventh Amendment, namely: (1) "the States' fears that federal courts would force them to pay their Revolutionary War debts, leading to their financial ruin," and (2) "the integrity retained by each State in our federal system." Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 39 (1994) (internal quotation marks omitted); see also Cash

4

v. Granville County Bd. of Educ., 242 F.3d 219, 223 (4th Cir. 2001) (using the twin purpose analysis to determine that a county school board is more like a county than an arm of the state and is therefore not entitled to immunity).  Ultimately, the decision of whether an entity is an "arm of the State" is a balancing test involving the twin aims of the Eleventh Amendment.

The Fourth Circuit has held that colleges and universities that are funded by the State, and which are structured so as to have close ties to the State, are considered to be an "arm of the State" for Eleventh Amendment purposes. See Md. Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 263 (4th Cir. 2005); Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1138 (4th Cir. 1990); Miller v. Guilford Technical Cmty. Coll., No. 2:96CV329, 1998 U.S. Dist. LEXIS 15153 (M.D.N.C. 1998).  The test "is a highly fact-intensive undertaking," and requires the court to "go into some detail regarding the University's structure and operations." Md. Stadium Auth., 407 F.3d at 257.

    1.    State Treasury Factor

One such factor in the balancing test leans heavily on the first of the twin purposes of the Eleventh Amendment: "the States' fears that federal courts would . . . lead[] to their financial ruin." Hess, 513 U.S. at 39.  Accordingly, the reason for immunizing "arm of the State" entities is that a civil suit resulting in an adverse holding against such an entity will be remedied with State funds.  Thus, a suit against an arm of the State is "in essence one for the recovery of money from the state," thus making the State "the real, substantial party in interest." Regents, 519 U.S. at 429 (internal quotation marks omitted).  Therefore, the "principal factor, upon which courts have virtually always relied, is whether a judgment against the governmental entity would have to be paid from the State's treasury." Cash, 242 F.3d at 223.

5

In the present case, CPCC is a member of the North Carolina Community College System and is founded under North Carolina General Statutes, Chapter 115D. The purpose of Chapter 115D is to "provide for the establishment, organization, and administration of a system of educational institutions throughout the State . . . , to serve as a legislative charter for such institutions, and to authorize the levying of local taxes and the issuing of local bonds for the support thereof." N.C. Gen. Stat. § 115D-1. The State Board of Community Colleges ("State Board") is responsible for allocating State financial support, providing "funds to meet the financial needs of [the] institutions." Id. § 115D-31. The broad array of items which the State Board is fiscally responsible for include: books, equipment, furniture, main operating expenses, additional regional expenses as defined by statute, and to an extent, funding for land, construction, and remodeling. Id. Since CPCC receives a large portion of its budget from the State Treasury, the Court finds that CPCC is an "arm of the State" and is, therefore, entitled to Eleventh Amendment immunity.

2. Integrity of the State Factors

Although the State treasury factor bears the most weight in the "arm of the state" test, it is also important to consider the second of the twin aims of the Eleventh Amendment: "the integrity retained by each State in our federal system." Hess, 513 U.S. at 39. Applying the "integrity of the State" aim requires an examination of "the nature of the entity and its relationship with the State." Cash, 242 F.3d at 224. In light of this examination, the Fourth Circuit has laid out three factors to be considered in addition to the State treasury factor: "(1) the degree of control that the State exercises over the entity or the degree of autonomy from the State that the entity enjoys; (2) the scope of the entity's concerns – whether local or statewide – with which the entity is involved; and (3) the manner in which State law treats the entity." Id. Under this "sovereign dignity" inquiry, "a

court must, in the end, determine whether the governmental entity is so connected to the State that the legal action against the entity would . . . amount to the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." Cash, 242 F.3d at 224 (quoting Seminole Tribe of Florida v. Florida, 517 U.S. 44, 58 (1996)); see also Hess, 513 U.S. at 39-40 (noting that Eleventh Amendment secures to the States "the respect" due them).

The Community College System is "a principal administrative department of State government," and is "under the direction the State Board of Community Colleges." N.C. Gen. Stat. § 115D-3. The State Board is made up of twenty-one members, including the Lieutenant Governor, the Treasurer of North Carolina, members appointed by the Governor, and members elected by the General Assembly. Id. § 115D-2.1. In addition to allocating State funds, the State Board is responsible for many other facets within Chapter 115D, including electing the President of the North Carolina System of Community Colleges, who serves as the chief administrative officer to the Community Colleges System Office. Id. § 115D-3.

When considering the "sovereign dignity" factors, CPCC's construction under Chapter 115D requires much of its operations to be governed by, or in compliance with, the State Board, leaving CPCC little autonomy from the State. Further, the North Carolina Community College System is founded to establish, organize, and administer a system of educational institutions State wide, rather than simply a local institution. Finally, North Carolina law treats the Community College System as a department of the State government. Specifically, the structure of § 115D-24 (waiver of governmental immunity) assumes § 115D institutions to be such "arms of the State" so as to be considered immunized by the Eleventh Amendment. Id. § 115D-24. Thus, under the sovereign dignity factor, CPCC is entitled to Eleventh Amendment immunity.

C. Waiver of Eleventh Amendment Immunity

Eleventh Amendment immunity may be waived by a state (or an entity thereof) by statute or by express waiver. A state may enact legislation that limits or waives state immunity, but a court "will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" Edelman, 415 U.S. at 673 (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171 (1909)). Under North Carolina General Statute § 115D-24, CPCC has indeed waived its Eleventh Amendment immunity "from liability for the death or injury of person or for property damage caused by the negligence or tort of any agent or employee . . . ." N.C. Gen. Stat. § 115D-24. The plaintiff's claim, however, is not one arising from such a cause of action as enumerated in § 115D-24, and therefore CPCC has not waived its constitutional immunity statutorily for matters of this case. Although a state's immunity may also be surrendered by express waiver outside of the legislation, no evidence suggests that CPCC has expressly waived its Eleventh Amendment protection from suits involving violations of 42 U.S.C. § 1983. The Court therefore concludes that CPCC's Eleventh Amendment protection has not been waived.

IV. **CONCLUSION**

Accordingly, finding that the Plaintiff's claim is barred, the Defendant is entitled to summary judgment.[1]

**IT IS, THEREFORE, ORDERED** that the Defendant's motion for summary judgment is **GRANTED**.

**SO ORDERED**.

---

[1] Since the Court concluded that CPCC is entitled to Eleventh Amendment immunity which bars Plaintiff's claims, the Court will not address the Defendant's other arguments.

Signed: December 3, 2008

Robert J. Conrad, Jr.
Chief United States District Judge